IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL CHESS,

       Plaintiff,                     No. 2: 10-cv-1261 LKK KJN P

   vs.

TOM FELKER, et al.,

       Defendants.             FINDINGS & RECOMMENDATIONS

_____/

I.  Introduction

       Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' summary judgment motion filed May 31, 2011.  After carefully considering the record, the undersigned recommends that this action be dismissed for lack of jurisdiction.  For this reason, the undersigned does not reach the merits of defendants' motion.

II.  Undisputed Facts

       For purposes of considering jurisdiction, the undersigned finds that the following facts are undisputed.

       At all relevant times, plaintiff was a state prisoner incarcerated at High Desert State Prison ("HDSP").  In 2008, defendant Felker was the Warden of HDSP.  In 2008, defendant

Gower worked as an Associate Warden at HDSP.  In 2008, defendant Quezada was a Correctional Officer with the Investigative Services Unit ("ISU") at HDSP.  In 2008, defendants Grannis and Phillips worked at the Inmate Appeals Branch investigating and responding to inmate appeals at the Director's level of the administrative process.

On May 6, 2008, defendant Quezada prepared an affidavit in support of an order to seize funds from plaintiff's bank account at Wachovia Securities.  This affidavit stated, in relevant part,

> On Saturday, April 12, 2008, the Investigative Services Unit (ISU) at High Desert State Prison (HDSP) conducted a consensual search of person and vehicle on Dinah Bayley... As a result of this search, approximately 8.3 grams of suspected Methamphetamines, saturated into homemade greeting cards was found in the possession of Dinah Bayley.  A presumptive field test revealed the controlled substance to be positive for Methamphetamines.
>
> Your affiant interviewed Bayley concerning her conspiring to traffic narcotics into HDSP.  Bayley was read her Miranda rights per the Miranda Supreme Court Decision and agreed to make a statement.  Bayley stated she intended to mail the methamphetamine soaked cards to Inmate Church after obtaining his permission to do so during the present visit.
>
> During a search of Bayley's vehicle, a copy of a bank check from Wachovia Securities, LLC Account # 7823-2696, dated 3/17/08, payable to Robert Church C/O Sanders in the amount of $400.00 was found in the same envelope as the methamphetamine soaked greeting cards.
>
> Intercepted from incoming mail was a letter addressed to Church from Bayley mentioning a check Bayley received for Church for $400.  Bayley states that she has no indication who sent the check but notes it is a bank draft.  Bayley includes a photocopy of the receipt portion of the bank draft indicating "REF: MICHAEL CHESS" and an issuing bank of Wachovia Securities, LLC in Virginia.
>
> On Sunday, April 13, 2008, ISU intercepted a phone conversation from an inmate identifying himself as "David" to Dinah Bayley at phone number 707-943-1732.  During the call David and Bayley discuss money and specifically mention Wachovia Securities and a bank location of Virginia.
>
> During an ongoing investigation of Inmate Chess's mail, a bank statement from Wachovia Securities in the name of Michael A.

Chess was intercepted detailing the above mentioned check issued to Robert Church, as well as two additional checks issued on the same date, one for $200.00 and another for $400.00.

Affiant knows these small amounts are consistent with drug purchases/transactions. A search of outgoing mail from Inmate Chess revealed a handwritten note containing what appears to be a request for funds transfer. In the top right corner of the page is a box drawn around information pertaining to "Chess Family Trust" belonging to Michael A. Chess, 8/10/89 along with branch and account numbers. The body of the note contains a salutation to Mr. Hartman and instructions for two separate withdrawals in the amounts of $100.00 and $50.00 respectively. The lower right corner of the page contains the routing information for the money complete with names and addresses of the recipients. The instructions indicate $100.00 is to be sent to Abe Wells, E40098, HDSP, C6-124, P.O. Box 270249, Susanville, CA, 96127. The note is signed, "My signature: Michael Chess."

By speaking with an employee with the Fraud Security Department of Wachovia Securities, it was confirmed that the above account does in fact exist in the name of Carol Smith for the Benefit of Michael A. Chess. A review of Inmate Chess's Central File confirmed that Carol Smith is Inmate Chess' cousin affording her the authority to write checks on this account in the name of Michael A. Chess.

Through a review of HDSP inmate records, Abe Wells is an inmate currently housed at High Desert State Prison, E-40098 Facility C, Building 6, cell # 124.

On May 1, 2008, a search of Facility C, Building 1, cell # 102, assigned to Inmate Chess was conducted. During this search numerous bank statements issued from Wachovia Securities in the name of Michael A. Chess were recovered. The statement of the period January 1-31, 2007 contains handwritten circles around the dates and amounts of some of the checks listed as issued from this account. The checks circled are in $50 and $100 amounts, which is consistent with controlled substance transactions and the attempt to avoid detection using simple multiple payments.

Additional Wachovia Securities bank statements identifying Michael Chess as the beneficiary on the account dating back to the period June 1–June 30, 2006. These statements contain itemizations of check withdrawals from this account this investigator believes represent additional payments for the facilitation of narcotics trafficking. These check withdrawals are itemized by date below:

****

For the statement period May 1–May 31, 2007, the account statement indicates an amount of $1,125.00 withdrawals by Check for the Current Period.  However, the page that itemizes the check date, check number and individual check amount has been removed and was not found during the search.

Your affiant reviewed the Central File of Inmate Michael Chess and obtained the following background information:

Inmate Chess has a controlling case dated 8/06/1997 from Placer County for PC 245 Assault with a Deadly Weapon on a Peace Officer or Fireman, PC 459 Burglary 2nd, and V2800.2 Disregard for Safety.

A review of Inmate Chess's disciplinary history while incarcered reveals the following:

11/05/07 Rules Violation Log # FCO-07-11-002
Possession of Hypodermic Syringe.
Found Guilty.

7/20/06 Rules Violation Log # S2-10-0745
Possession of Controlled Substance.
Found Guilty.

9/22/05 Rules Violation Log # S2-05–09-1036
Possession of Controlled Substance.
Found Guilty.

10/28/04 Rules Violation Log # S2-04-10-1148
Possession of Controlled Medications.
Found Guilty.

7/20/04 Rules Violation Log # S2-04-07-0859.
Possession of Controlled Medications.
Found Guilty.

2/13/03 Rules Violation Log # S1-03-02-0213
Possession of Controlled Substance.
Found Guilty.

10/10/02 Rules Violation Log # S1-02-10-0028
Possession of Controlled Substance.
Found Guilty.

It should be noted Inmate Chess submitted a dirty urinalysis on 12/19/07, which was found positive for Morphine.  Inmate Chess was placed on monthly Mandatory Random Drug Testing in January 2008.  Inmate Chess has subsequently provided positive US samples on 4/11/08 for Morphine and Codeine and on 4/30/08 for Morphine.  Inmate Chess does take morphine daily under the

supervision of medical care; however, he does not currently take anything containing Codeine or Codeine products.

Your affiant reviewed the Central File of Inmate Robert Church and obtained the following information:

Inmate Church has a controlling case dated 3/21/03 from Humboldt County for PC 187(a) First Degree Murder.

A review of Inmate Church's criminal history reveals an extensive arrest record involving the sales, transportation, possession, and manufacture of controlled substances; as well as, charges of possession of controlled substance paraphernalia demonstrating his willingness and propensity for involvement in criminal sales, transportation and trafficking of narcotics/illegal controlled substances as detailed below:

***

On May 2, 2008, affiant contacted the Wachovia Securities Bank in Chico, CA. Affiant spoke with the branch manager who confirmed that Michael Chess has an account (#78232696), with a balance of $18000.00. Your affiant issued an Adverse Claims and an Affidavit in support of an Adverse Claims, pursuant to section 952 of the Financial Code of the State of California, on account # 78232696 held by Wachovia Securities Bank. The Adverse Claim froze all access to the account by Michael Chess or his agents for three business days.

The employee at Wachovia Securities advised your affiant a seizure order, pursuant to the provision of 11470 of the Health and Safety Code of the State of California, can be served at the local branch located at 301 Broadway Street, Chico, CA, 95928.

Based upon his training, education and experience, in particular that involving investigations of money laundering, narcotics trafficking and narcotics asset forfeiture matters, affiant has found the following to be true.

***

Based upon the results of the ISU narcotics investigation, the search of Dinah Bayley and her vehicle, an examination of the documents seized and retained as evidence in said search, and the aforementioned facts and circumstances, affiant states that there is reasonable justification to believe and does believe,

Michael Chess has been, and is currently, providing funds to Robert Church as evidenced by the Wachovia Securities Check receipt referencing Michael Chess provided to Robert Church by Dinah Bayley as payment for; and that Robert Church is instructing

5

1    Dinah Bayley to, traffic narcotics and/or illegal controlled
     substances through the mail using methamphetamine soaked
2    greeting cards.

3    That Dinah Bayley and Inmate Church are engaged in narcotics
     sales activity, for profit, has been so engaged for an extended
4    period of time, and that Inmate Chess has knowledge of and
     continues to facilitate this activity.

5
     That Carol Smith has maintained an account with Wachovia
6    Securities, for the Benefit of Michael A. Chess, in the form of an
     investment account #78232696.  Furthermore, Affiant knows
7    Inmate Chess has purchased narcotics using funds from his account
     at Wachovia Securities, and has done so for some time, and will
8    continue to use these funds to facilitate narcotics trafficking inside
     High Desert State Prison.

9
     That the funds necessary to acquire such assets and meet such
10   expenses are derived in part from illegitimate sources, as well as,
     legitimate sources, to wit, Inmate Chess' family trust fund.
11
     Inmate Chess did participate and facilitate the trafficking of
12   methamphetamines into HDSP, and by doing so has violated H &
     S Code 11470(f):
13
     ***
14
     Therefore, based upon the aforementioned facts and circumstances,
15   affiant requests that the Superior Court issue an order directing the
     Wachovia Securities Bank to deliver to the Lassen County District
16   Attorney Office Asset/Force Division funds on deposit, to wit,
     Eighteen thousand ($18000.00) dollars on deposit in account
17   78232696, held by Wachovia Securities, 301 Broadway Street,
     Chico, California, 95928, held in the name of Chess Family Trust,
18   Carol Smith Trustee, for the benefit of Michael Chess.

19   (Dkt. No. 49-1 at 20-25.)

20          On May 6, 2008, the Lassen County Superior Court found probable cause to seize

21   the funds in plaintiff's account based on defendant Quezada's affidavit and, under California

22   Health and Safety Code section 11471, issued an order for seizure of plaintiff's assets in the

23   Wachovia Securities Account.  (Dkt. No. 49-1 at 16-17.)   Later the same day, defendant

24   Quezada served a copy of the seizure order on the Chico Branch of Wachovia Securities Bank.

25   (Dkt. No. 48-4, Quezada Declaration, ¶ 18.)

26   ////

1    On May 7, 2008, defendant Quezada personally served plaintiff with a copy of the

2  Petition for Forfeiture, Notice of Seizure and Intended Forfeiture, Lis Pendis, Disclaimer Form

3  and a blank Claim Opposing Forfeiture form.  (Id. at ¶ 20.)  On May 22, 2008, defendant

4  Quezada received from Wachovia Securities Bank a check in the amount of $17,395.17, the total

5  amount of plaintiff's account.  (Id. at ¶ 22.)  The check was made payable to the Lassen County

6  District Attorney's Office.  (Id.)   On May 27, 2008, defendant Quezada submitted the check and

7  the Seizure Order Return to the Lassen County Superior Court.  (Id.)

8    Plaintiff filed a claim contesting the seizure of his assets in the Lassen County

9  Superior Court, but on June 9, 2008, the claim was returned because it was not on the proper

10  form.  (Dkt. No. 49-1 at 4.)

11    On February 4, 2009, plaintiff filed a petition for writ of mandate in the Lassen

12  County Superior Court on grounds that his claim form was erroneously rejected and his assets

13  were improperly seized.  (Id. at 5-8.)  On August 10, 2009, the Lassen County Superior Court

14  issued an order granting plaintiff's petition for writ of mandate.  (Id. at 2-3.)   The Superior Court

15  ordered that plaintiff could file a claim opposing forfeiture within thirty days.  (Id. at 3.)

16    On September 17, 2009, plaintiff filed a claim opposing the forfeiture in the

17  Lassen County Superior Court.  (Dkt. No. 49-2 at 5-10.)  On October 13, 2009, the Lassen

18  County District Attorney filed a petition for forfeiture and a motion to strike plaintiff's claim

19  form.  (Id. at 12-19.)   On October 22, 2009, plaintiff filed an opposition to the petition for

20  forfeiture.  (Id. at 24-26.)  On October 28, 2009, the Lassen County Superior Court denied the

21  District Attorney's motion to strike and set a trial date on the petition for forfeiture.  (Id. at 32-

22  34.)

23    On January 5, 2010, a trial on the petition for forfeiture was held in the Lassen

24  County Superior Court.  (Id. at 54-57.)   On January 6, 2010, the Superior Court entered a

25  judgment of forfeiture.  (Id. at 59-60.)

26  ////

1    On February 24, 2010, plaintiff filed a petition for writ of habeas corpus in the

2    California Court of Appeal seeking to vacate the judgment and have his assets returned.  (Dkt.

3    No. 49-3 at 5-13.)  On March 11, 2010, the California Court of Appeal denied the petition on

4    grounds that plaintiff had an adequate remedy by appeal.  (Id. at 2.)  Plaintiff did not file an

5    appeal.

6    On April 27, 2010, plaintiff filed a motion for return of his funds in the Lassen

7    County Superior Court.  (Dkt. No. 49-2 at 72-75.)  On June 1, 2010, the Lassen County Superior

8    Court denied this motion on the grounds that it was untimely.  (Id. at 79-80.)

9    III.  Analysis

10    This action is proceeding on the original complaint filed May 24, 2010 as to

11    defendants Felker, Quezada, Gower, Phillips and Grannis.  Plaintiff alleges that defendant

12    Quezada illegally withdrew money from his bank account in violation of his right to due process.

13    Plaintiff alleges that defendant Felker exonerated plaintiff of the charges of conspiring to bring

14    narcotics into the prison, but did not "correct the illegality" of the money removed from

15    plaintiff's bank account.  Plaintiff alleges that defendants Gower, Phillips and Grannis violated

16    his right to due process by denying his administrative appeals challenging the removal of the

17    money from his bank account.

18    In his complaint, as relief, plaintiff seeks monetary damages against defendants

19    "for illegally taking plaintiff's funds."  Plaintiff seeks the return of the money withdrawn from

20    his Wachovia bank account as well as compensatory and punitive damages.

21    In his opposition to defendants' summary judgment motion, plaintiff expands on

22    his claims.  In particular, plaintiff alleges that the statements made by defendant Quezada in the

23    May 6, 2008 affidavit in support of the order to seize funds were false.  Plaintiff also alleges that

24    defendant Quezada kept some of the seized money for his own use.  Plaintiff also alleges that the

25    fact that he was not charged with trafficking drugs into the prison supports his claim that the

26    ////

1    statements in defendant Quezada's affidavit were false.[1]

2           A party may not seek appellate review in federal court of a decision made in the

3    state court under the Rooker–Feldman doctrine.  See Rooker v. Fidelity Trust Co., 263 U.S. 413

4    (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).  Accordingly, the court "lack[s]

5    jurisdiction to exercise appellate review over final state court judgments."  Henrichs v. Valley

6    View Dev., 474 F.3d 609, 613 (9th Cir. 2007).  The Ninth Circuit explained,

7                    Typically, the Rooker Feldman doctrine bars federal courts from
                     exercising subject-matter jurisdiction over a proceeding "in which
8                    a party losing in state court" seeks "what in substance would be
                     appellate review of the state judgment in a United States district
9                    court, based on the losing party's claim that the state judgment
                     itself violates the loser's federal rights."
10

11   Doe v. Mann, 415 F.3d 1038, 1041–42 (9th Cir. 2005) (quoting Johnson v. DeGrandy, 512 U.S.

12   997, 1005-06 (1994)).  In addition, a complaint in federal court must be dismissed for lack of

13   subject matter jurisdiction if the "claims raised are ... 'inextricably intertwined' with the state

14   court's decision such that the adjudication of the federal claims would undercut the state ruling."

15   Bianchi v. Rylaarsdam, 334 F.3d 894, 898 (9th Cir. 2003), citing Feldman, 460 U.S. at 483, 485.

16           The Ninth Circuit has held that the "inextricably intertwined" standard is to be

17   construed narrowly.  Kougasian v. TMSL, Inc., 359 F.3d 1136, 1142  (9th Cir. 2004).  The Ninth

18   Circuit explained the rationale for such an approach in Kougasian:

19                    [T]he "inextricably intertwined" test does not mean that a federal
                     plaintiff can never raise issues that are "inextricably intertwined"
20                   with issues already decided in completed state court litigation. If
                     that were so, Rooker-Feldman would in some cases give greater
21                   preclusive effect to state court judgments than the states
                     themselves would give those judgments. Such super-preclusive
22

23           [1] In his opposition to defendants' summary judgment motion, plaintiff also claims that
     defendant Quezada denied him access to his legal materials and denied him access to the law
24   library in an attempt to prevent him from challenging the forfeiture.  Plaintiff's complaint does
     not contain these allegations.  Plaintiff may not amend his complaint by way of his opposition to
25   defendants' summary judgment motion to add a claim for alleged violation of the right to access
     the court.
26

1        effect would violate the requirement of 28 U.S.C. § 1738 that
         federal courts give the same (not more and not less) preclusive
2        effect the rendering state courts would give to those judgments.

3   Id. at 1142-43 (citations omitted).  Accordingly, under Ninth Circuit law, the Rooker-Feldman

4   doctrine will only apply where a plaintiff has "allege[d] legal error by the state court and seek[s]

5   relief from the state court's judgment."  Id. at 1142 (citing Noel v. Hall, 341 F.3d 1148, 1158

6   (9th Cir. 2003)).

7              A challenge under the Rooker-Feldman doctrine is a challenge for lack of subject

8   matter jurisdiction and may be raised at any time by either party or sua sponte by the court.

9   Olson Farms, Inc. v. Barbosa, 134 F.3d 933, 937 (9th Cir. 1998).  Because plaintiff's claims are

10  barred by the Rooker-Feldman doctrine, the undersigned sua sponte raises this matter.

11             Although plaintiff does not directly challenge the June 6, 2010 judgment of

12  forfeiture by the Lassen County Superior Court, his claims are inextricably intertwined with this

13  judgment.  The gravaman of this action is plaintiff's claim that defendant Quezada lied in his

14  affidavit made in support of the order to seize funds.  The Lassen County Superior Court relied

15  on the information in this affidavit when it found probable cause to seize plaintiff's funds.  At the

16  trial, defendant Quezada testified.  (Dkt. No. 49-2 at 54.)  By challenging defendant Quezada's

17  veracity, plaintiff takes issue with the state court judgment of forfeiture.  According to the

18  Rooker–Feldman doctrine, therefore, this court lacks jurisdiction over the claims against

19  defendant Quezada.  See Exxon Mobile Corp v. Saudi Basic Indus. Corp., 544 U.S. 280, 284

20  (2005) (The Rooker–Feldman doctrine precludes the district court from appellate review of

21  "cases brought by state-court losers complaining of injuries caused by state-court judgments

22  rendered before the district court proceeding commenced ...").

23             In his opposition, plaintiff also claims that defendant Quezada kept some of the

24  money seized for himself.  This claim is also barred by the Rooker-Feldman doctrine because it

25  implicates the validity of the state court judgment of forfeiture.  To the extent such a claim may

26  be construed as not implicating the validity of the state court judgment, it should be dismissed for

1  failing to state a colorable due process claim for the reasons stated herein.

2         The United States Supreme Court has held that "an unauthorized intentional

3  deprivation of property by a state employee does not constitute a violation of the procedural

4  requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful

5  postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984).

6  Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional

7  deprivations constitute actionable violations of the Due Process Clause.  An authorized

8  deprivation is one carried out pursuant to established state procedures, regulations, or statutes.

9  Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of

10 Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).

11        In the instant case, plaintiff has not alleged any facts which suggest that the

12 alleged deprivation by defendant Quezada was authorized.  The California Legislature has

13 provided a remedy for tort claims against public officials in the California Government Code,

14 §§ 900, et seq.  Accordingly, this claim is legally frivolous to the extent it is not barred by the

15 Rooker-Feldman doctrine.

16        Plaintiff's claims that the remaining defendants, in essence, failed to overturn the

17 judgment of the Superior Court when they reviewed his administrative appeals are also barred by

18 the Rooker-Feldman doctrine.  Accordingly, the undersigned recommends that this action be

19 dismissed for lack of jurisdiction.[2]

20 ////

21 ////

22

23        [2] In the summary judgment motion, defendants argue that defendant Quezada is entitled
   to summary judgment on grounds that plaintiff received all the process he was due under state
24 law.  Defendants argue that defendants Felker, Gower, Grannis and Phillips are entitled to
   summary judgment because they were not involved with the investigation or seizure proceedings,
25 and they did not become involved in this matter until long after plaintiff's assets were seized.
   Because this action is barred by the Rooker-Feldman doctrine, the undersigned does not reach
26 these issues.

11

1    IT IS HEREBY RECOMMENDED that this action be dismissed for lack of

2  subject matter jurisdiction.

3    These findings and recommendations are submitted to the United States District

4  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

5  days after being served with these findings and recommendations, any party may file written

6  objections with the court and serve a copy on all parties.  Such a document should be captioned

7  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

8  shall be served and filed within fourteen days after service of the objections.  The parties are

9  advised that failure to file objections within the specified time may waive the right to appeal the

10 District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11 DATED:  November 14, 2011

12

13                                          _____
                                            KENDALL J. NEWMAN
14                                          UNITED STATES MAGISTRATE JUDGE

15 ch1261.sj

16

17

18

19

20

21

22

23

24

25

26